**LAW OFFICES OF**
**BLAKE GOODMAN, PC**

Blake Goodman
Bar Number: 7436
900 Fort Street Mall, #910
Honolulu, HI 96813
E: blake@debtfreehawaii.com
T: (808) 828-4274

*Attorneys for Plaintiffs*
*Jason Kauanui and Melissa Kauanui*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JASON KAUANUI AND MELISSA KAUANUI, | **Case No.:** 2:25-cv-268 |
| Plaintiffs, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| JPMORGAN CHASE BANK, N.A.; FIRST HAWAIIAN BANK; EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; and TRANS UNION LLC, | 1. **FCRA, 15 U.S.C. § 1681,** *et seq.* |
| Defendants. | |

Plaintiffs Jason Kaunaui ("Mr. Kaunaui") and Melissa Kaunaui ("Mrs. Kaunaui") (referenced collectively as "Plaintiffs") through counsel, allege violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* against

Defendants JP Morgan Chase Bank, N.A. ("Chase") and First Hawaiian Bank ("First Hawaiian") (referenced collectively as "Furnisher Defendants"); and Defendants Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and Trans Union LLC ("Trans Union") (Equifax, Trans Union and Experian referenced collectively as "CRA Defendants").

## I.    **INTRODUCTION**

1.    Plaintiffs' Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, by Defendants Equifax, Experian, and Trans Union.    Plaintiffs contend that the CRA Defendants failed to reasonably investigate Plaintiffs' consumer disputes, which each resulted in Defendants' reporting inaccurate information about Plaintiffs.

2.    Plaintiffs' Complaint also alleges violations of the FCRA against the Furnisher Defendants for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiffs' disputes from CRA Defendants Experian, Equifax, and Trans Union.

## II.    **JURISDICTION AND VENUE**

3.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiffs alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

4.    Venue in the District of Hawaii is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

### III.    PARTIES

5.    Plaintiffs incorporate herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

6.    Plaintiffs are each natural persons who reside in Kaneohe, Hawaii.

7.    Plaintiffs are each "consumers" as defined by the FCRA, 15 U.S.C. § 1681a(c).

8.    Defendant Chase Bank is a financial institution engaged in the business of giving credit and collecting debt. Chase Bank is also a furnisher, as contemplated by in 15 U.S.C. § 1681s-2. Upon information and belief, Chase Bank is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. Chase Bank is headquartered at 1111 Polaris Parkway Columbus, Ohio 43271. Chase Bank can be served through its registered agent: C T Corporation System at 900 Fort Street Mall, Ste. 1680 Honolulu, Hawaii 96813.

9.    Defendant First Hawaiian is a financial institution engaged in the business of giving credit and collecting debt. First Hawaiian is also a furnisher, as contemplated by in 15 U.S.C. § 1681s-2. Upon information and belief, First

3

Hawaiian is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. First Hawaiian is headquartered at 999 Bishop St. 29th Floor, Honolulu, Hawaii 96813. First Hawaiian can be served through its registered agent: Joel E. Rappoport at 999 Bishop St. 8th Floor., Honolulu, Hawaii 96813.

10.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626. Experian can be served through its registered agent CT Corporation System 330 North Brand Boulevard Glendale, California 91203

11.     Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309.  Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

12.    Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 USC 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served at their Registered Agent Illinois Corporation Service Company at 801 Adlai Stevenson Drive, Springfield, IL 62703.

13.    The CRA Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. The CRA Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

14.    During all times pertinent to this Complaint, the Furnisher Defendants and the CRA Defendants were authorized to conduct business in the State of Hawaii and conducted business in the State of Hawaii on a routine and systematic basis.

15.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

16.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## IV.    FACTUAL BACKGROUND

17.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

18.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

19.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

20.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

21.    Defendants Experian, Equifax, and Trans Union, the three major consumer reporting agencies (at times referred to individually as a "CRA," and "the CRAs" collectively) in the United States, regularly publish and distribute credit information about Plaintiffs and other consumers through the sale of consumer reports (also known as credit reports).

22.    The CRA Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

23.    The CRA Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRAs by furnishers, and other information is independently gathered by CRAs from third party

providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

24.    The CRA Defendants regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

25.    The diligence the CRA Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

26.    The CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

27.    The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

28.    The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like the CRA Defendants) to make lending decisions.

29.    Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret

the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's consumer reports.

30.    The information the CRA Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines his or her FICO Score(s).

31.    FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

32.    FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

a.    "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower the consumer's FICO Score will be.

b. The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that the consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact the consumer's credit score.

c. The CRA Defendants are well aware that the effect of a Discharge Order in a Chapter 13 Bankruptcy is to discharge unsecured debts if those debts are listed in the debtor's bankruptcy petition.

33.     The CRA Defendants are further aware that the default rule is that all unsecured debts will be listed and discharged in Chapter 13 bankruptcy and that only on rare occasions will an unsecured debt not be discharged upon completion of a Chapter 13 plan.

34.     The CRA Defendants are also notified of consumer bankruptcies by furnishers of information and from the information the CRA Defendants independently gather from third parties.

35.     The CRA Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 13 Bankruptcy.

36.    The CRA Defendants routinely report inaccurate, and materially misleading information about consumers like Plaintiff, without verifying or updating the information as required by § 1681e(b), despite possessing information: inconsistent with the reported information and/or possessing information that establishes the reported information is inaccurate.

37.    Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, the CRA Defendants frequently report information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

38.    The CRA Defendants regularly publish consumer information that conflicts with information: provided by data furnishers to the CRA Defendants, already included in the CRA Defendants' credit files, contained in public records that the CRA Defendants regularly access, and/or sourced through the CRA Defendants' independent and voluntary efforts.

39.    Further, the CRA Defendants know the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished or reported information, and/or information contained in the CRA Defendants' own files.

40.    Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendants for its inaccurate consumer reporting following a Chapter 13 discharge.

41.    Thus, the CRA Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures which causes the CRA Defendants to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiffs*

42.    Plaintiffs filed a Chapter 13 Bankruptcy on or about May 26, 2019, in the United States Bankruptcy Court for the District of Hawaii (Case No. 19-00671).

43.    In Plaintiffs' Chapter 13 Plan, Plaintiffs specified that certain accounts would not be included in the Chapter 13 Bankruptcy, and that Plaintiffs would continue to maintain the current contractual payments, and make such payments directly to the creditors.

44.    Among accounts specified by Plaintiffs to be excluded from their Chapter 13 Bankruptcy case were: 1) Plaintiffs' mortgage with Chase, ending in *********8567 and opened in December 2016 (the "Chase Mortgage Account"); Plaintiffs' automobile loan with First Hawaiian, ending in *********0001 and opened in August 2018; and Mr. Kauanui's automobile loan with Chase (the "First Hawaiian Account"), ending in **********2712 opened in June 2015 (the "Chase

Auto Account")  (the Chase Mortgage Account, Chase Auto Account, and First Hawaiian Account collectively referenced as  the "Accounts").

45.    Thereafter, Plaintiffs continued to make regular timely payments on the Accounts directly to the respective creditors, and the creditors received no distribution of funds under the Chapter 13 Plan.

46.    Plaintiffs received an Order of Discharge on or about July 10, 2024.

47.    In or around November 2024, Plaintiffs obtained and reviewed copies of their credit reports from the CRA Defendants, to ensure their bankruptcy was being accurately reported.

48.    Upon review of their credit reports, Plaintiffs observed that each of the CRA Defendants reported inaccurate and/or materially misleading information concerning the Accounts.

<u>**Allegations Specific to Mrs. Kauanui's Credit Reports**</u>

49.    In Mrs. Kauanui's Equifax report, dated November 18, 2024, Equifax reported the Chase Mortgage Account with a status of "Included in Chapter 13," and with a "Date of Last Payment" as "Dec 2022."

50.    Additionally, Equifax reported the First Hawaiian Account with a status of "Included in Chapter 13."

13

51.    Similarly, in Mrs. Kauanui's Trans Union report, dated November 18, 2024, Trans Union reported the Chase Mortgage Account with a status of "Account Included in Bankruptcy," and with the "Last Payment Made" as December 9, 2022.

52.    Additionally, Trans Union reported the First Hawaiian Account with a remark of "Chapter 13 Bankruptcy."

53.    Similarly, in Mrs. Kauanui's Experian report, dated November 18, 2024, Experian reported the Chase Mortgage Account with a status of "Petition for Chapter 13 Bankruptcy."

54.    Additionally, Experian reported the First Hawaiian Bank account with a status of "Petition for Chapter 13 Bankruptcy."

**<u>Allegations Specific to Mr. Kauanui's Credit Reports</u>**

55.    In Mr. Kauanui's Equifax report, dated November 18, 2024, Equifax reported the Chase Mortgage Account with a status of "Included in Chapter 13," and with a "Date of Last Payment" as "Dec 2022."

56.    Additionally, Equifax reported the Chase Auto Account with a status of "Included in Chapter 13."

57.    Additionally, Equifax reported the First Hawaiian Account with a status of "Included in Chapter 13."

58.     Similarly, in Mr. Kauanui's Trans Union report, dated November 18, 2024, Trans Union reported the Chase Mortgage Account with a status of "Account Included in Bankruptcy," and with the "Last Payment Made" as December 9, 2022.

59.     Additionally, Trans Union reported the First Hawaiian Account with a remark "Chapter 13 Bankruptcy."

60.     Similarly, in Mr. Kauanui's Experian report, dated November 18, 2024, Experian reported the Chase Mortgage Account with a status of "Petition for Chapter 13 Bankruptcy."

61.     Additionally, Experian reported the Chase Auto Account with a status of "Discharged through Bankruptcy Chapter 13."

62.     Additionally, Experian reported the First Hawaiian Bank account with a status of "Petition for Chapter 13 Bankruptcy."

## **Allegations Specific to Both Plaintiffs**

63.     None of the Accounts were included in, or discharged by, Plaintiffs' Chapter 13 Bankruptcy.

64.     Plaintiffs made timely, regular payments on each of the Accounts directly to the respective creditors.

65.     The First Hawaiian Account was paid off in full and closed in or around February 2025, and should be reporting as such.

66.    The Chase Auto Account was paid off in full and closed in or around 2020, and should be reporting as such.

67.    Plaintiffs continue to make regular, timely payments on the Chase Mortgage Account, including as recently as on or about June 9, 2025, and should be reporting as such.

68.    The Accounts should not have been inaccurately reported with bankruptcy statuses and/or remarks.

69.    The First Hawaiian Account and Chase Auto Account should each have been reported with accurate statuses such as "Closed. Paid in Full" that reflect the actual status of the First Hawaiian Account and Chase Auto Account, instead of incorrect bankruptcy statuses.

70.    The Chase Mortgage Account should have been reported with an accurate status such as "Current" that reflects the actual status of the Chase Mortgage Account, instead of an incorrect bankruptcy status.

**Mrs. Kauanui's Disputes to the CRA Defendants**

71.    On or about December 8, 2024, Mrs. Kauanui mailed letters to each of the CRA Defendants and disputed their reporting of the Chase Mortgage Account and the First Hawaiian Account. Mrs. Kauanui's dispute informed CRA Defendants that the Chase Mortgage Account and the First Hawaiian Account were not

discharged in her bankruptcy, and that she continued to make timely payments on the Chase Mortgage Account and First Hawaiian Account.

72. Upon information and belief, the CRA Defendants received Mrs. Kauanui's disputes.

73. Upon information and belief, the CRA Defendants each forwarded Mrs. Kauanui's to each of the Furnisher Defendants, as required by the FCRA.

74. On or about December 26, 2024, Experian responded to Mrs. Kauanui's dispute, but refused to investigate Mrs. Kaunaui's dispute, stating that the dispute appeared to have been made without her authorization, despite Mrs. Kaunui's dispute containing her bankruptcy case number, full name, date of birth, home address, phone number, social security number, and physical signature.

75. On or about January 28, 2025, Trans Union responded to Mrs. Kauanui's dispute, but did not correct its inaccurate reporting. Instead, Trans Union merely verified its reporting of the Chase Mortgage Account as accurate, and deleted the First Hawaiian Account tradeline from Mrs. Kauanui's report.

76. Equifax did not respond to Mrs. Kauanui's dispute.

77. On or about February 7, 2025, Mrs. Kauanui obtained new copies of her Equifax and Experian credit reports, and observed that Equifax and Experian each continued to inaccurately report the Chase Mortgage Account and First Hawaiian Account as being included in/discharged by Plaintiffs' bankruptcy.

17

## **Mr. Kauanui's Disputes to the CRA Defendants**

78.     On or about December 8, 2024, Mr. Kauanui mailed letters to each of the CRA Defendants and disputed their reporting of the Accounts. Mr. Kauanui's dispute informed CRA Defendants that the Accounts were not discharged in his bankruptcy, and that he continued to make timely payments on the Accounts.

79.     Upon information and belief, the CRA Defendants received Mr. Kauanui's disputes.

80.     Upon information and belief, the CRA Defendants each forward Mr. Kauanui's to each of the Furnisher Defendants, as required by the FCRA.

81.     On or about January 02, 2025, Experian responded to Mr. Kauanui's dispute but failed to correct its reporting of the Accounts

82.     Specifically, Experian refused to investigate Mr. Kauanui's dispute of the Chase Auto Account, stating "ITEM ALREADY MATCHES THE DISPUTE REQUEST."

83.     Additionally, Experian changed the statuses of the Chase Mortgage Account and First Hawaiian Account from "Petition for Chapter 13 Bankruptcy" to "Discharged through Bankruptcy Chapter 13."

84.     On or about January 20, 2025, Trans Union responded to Mr. Kauanui's dispute, but did not correct its inaccurate reporting. Instead, Trans Union merely verified its reporting of the First Hawaiian Account as accurate, and deleted the

Chase Auto Account and Chase Mortgage Account tradelines from Mr. Kauanui's report.

85.    Equifax did not respond to Mr. Kauanui's dispute.

86.    On February 10, 2025, Mr. Kauanui pulled a new credit report from Equifax and observed that Equifax was still inaccurately reporting the Accounts as being included in/discharged by Plaintiffs' bankruptcy.

87.    Upon information and belief, the Furnisher Defendants received notice of Plaintiffs' disputes from each of the CRA Defendants.

88.    Upon information and belief, the Furnisher Defendants failed to reasonably reinvestigate Plaintiffs' disputes.

89.    Upon information and belief, the Furnisher Defendants either did not reinvestigate Plaintiffs' disputes at all or simply confirmed that what they were already reporting was accurate without reviewing the substance of Plaintiffs' disputes.

90.    Despite knowing that the Accounts were not included in or discharged by Plaintiffs' bankruptcy, the Furnisher Defendants continued to verify their inaccurate reporting.

91.    The Furnisher Defendants' conduct was willful.

92.     Despite ample reason to doubt any such information provided by the Furnisher Defendants, the CRA Defendants continued to erroneously report the Accounts in Plaintiffs' credit files and/or consumer reports.

93.     Upon information and belief, the CRA Defendants failed to reasonably reinvestigate Plaintiff's disputes. Instead, the CRA Defendants mindlessly parroted the inaccurate information provided by the Furnisher Defendants without evaluating the substance of Plaintiffs' disputes or conducting any reinvestigation at all.

94.     Plaintiffs have been extremely frustrated by their inability to correct the inaccurate furnishing of information by the Furnisher Defendants and/or the inaccurate consumer reporting by the CRA Defendants. Plaintiffs have expended a substantial amount of time and labor to correct this matter, all to no avail.

95.     Upon information and belief, the CRA Defendants continue to report the Accounts with inaccurate statuses and/or are not reporting the Accounts at all, depriving Plaintiffs of the benefit of positive payment history for current and/or closed accounts.

96.     Defendants' reporting of the Accounts is patently false and therefore inaccurate.

97.     If not patently false, Defendants' reporting of the Accounts is materially misleading and therefore inaccurate.

98.    Upon information and belief, had the CRA Defendants accurately reported the Accounts with correct statuses and payment histories, Plaintiffs' credit scores would have been better.

99.    After Mrs. Kauanui's dispute, in or around March 2025, Mrs. Kauanui applied for a Barclays Bank credit card, but was denied due to the Trans Union's inaccurate reporting.

100.    Additionally, after Mrs. Kauanui's dispute, in or around April 2025, Mrs. Kauanui applied for a Bank of America credit card, but was denied due to Experian's inaccurate reporting.

101.    Additionally, after Mrs. Kauanui's dispute, in or around April 2025, Mrs. Kauanui applied for a Citizens Bank credit card, but and was denied due to Equifax's inaccurate reporting.

102.    Similarly, after Mr. Kauanui's dispute, in or around May 2025, Mr. Kauanui applied for credit with Credit One Bank and was approved, but at worse overall terms due to the CRA Defendants' inaccurate reporting.

103.    As a direct result of the CRAs Defendants' inaccurate reporting, Plaintiffs suffer damages, including  decreased credit scores, lower overall creditworthiness, and other financial harm.

104.    Plaintiffs sustained actual monetary damages from the expense of mailing Plaintiffs' disputes to CRA Defendants.

105.   As a direct result of CRA Defendants' inaccurate reporting, Plaintiffs also suffer actual damages in the form of attorneys' fees  incurred, related to the CRA Defendants' inaccurate reporting, as well as the cost of mailing the disputes to the CRA Defendants.

106.   Additionally, Plaintiffs suffer interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, loss of sleep, reputational damage, frustration, shock, embarrassment, violation of Plaintiffs' right to privacy, and anxiety.

## COUNT I
### The CRA Defendants' Violation of the Fair Credit Reporting Act, 15 U.S.C. §, 1681(i)

107.   Plaintiffs incorporate by reference all of the above factual allegations of this Complaint as though fully set forth herein at length.

108.   Under the FCRA, when a consumer reporting agency receives a dispute from a consumer that indicates an item of information in his or her credit file is inaccurate or incomplete, the consumer reporting agency is required to conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. 15 U.S.C. § 1681i.

109.   The CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the information they reported about Plaintiffs and their accounts was accurate.

110.   The CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by failing to correct or delete the inaccurate information reported in Plaintiffs' consumer reports.

111.   Upon information and belief, the CRA Defendants continued to blindly rely on inaccurate information provided by the Furnisher Defendants despite possessing information that directly conflicted with the information provided by Plaintiffs.

112.   The CRA Defendants had reason to know that the information furnished by the Furnisher Defendants was inaccurate or otherwise unreliable.

113.   Upon information and belief, the CRA Defendants did not undertake any action to ensure that information received from the Furnisher Defendants was accurate or reliable. The CRA Defendants possessed information provided by Plaintiffs that directly contradicted the Furnisher Defendants' reporting of Plaintiffs' accounts. Yet despite knowledge of the information's unreliability, the CRA Defendants made no independent effort to verify its accuracy.

114.   The CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the information disputed by Plaintiffs was inaccurate.

115.   The CRA Defendants violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly correct the disputed inaccurate information in Plaintiff's credit file upon reinvestigation of Plaintiffs' disputes.

116.   As a result of the CRA Defendants' violations of § 1681i, Plaintiffs have suffered actual damages as detailed herein.

117.   Upon information and belief, the CRA Defendants knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

118.   Therefore, the CRA Defendants acted consciously in failing to adhere to their obligations under the FCRA.

119.   The CRA Defendants' violations of § 1681i were willful.

120.   Therefore, the CRA Defendants are individually liable to Plaintiffs for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

121.   Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681i were negligent.

122.   Therefore, the CRA Defendants are individually liable to Plaintiffs for statutory and actual damages in an amount to be determined a trial. 15 U.S.C. § 1681o.

123.   In any event, the CRA Defendants are liable for Plaintiffs' reasonable attorney's fees and costs pursuant to 15 U.S.C §§ 1681n, 1681o.

## COUNT II

### The Furnisher Defendants' Violations of the FCRA, 15 U.S.C. § 1681s-2(b)

124.   Plaintiffs incorporate by reference all the above factual allegations of this Complaint as though fully stated herein.

125.   The FCRA requires that furnishers of information, like the Furnisher Defendants, conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

126.   Furnisher Defendants knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. Furnisher Defendants possess or can easily obtain substantial written materials that detail their duties as furnishers under the FCRA.

127.   Despite knowing these legal obligations, the Furnisher Defendants acted consciously in breaching their known duties and deprived Plaintiffs of their rights under the FCRA.

128.   Plaintiffs disputed the Furnisher Defendants tradelines through all three national CRAs: Experian, Equifax, and TransUnion.

129.    Thereafter, the consumer reporting agencies forwarded Plaintiffs' disputes to the Furnisher Defendants, notifying the Furnisher Defendants that Plaintiffs were disputing the information they had furnished about the Accounts.

130.    The Furnisher Defendants received notice of Plaintiffs' disputes and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

131.    The Furnisher Defendants continue to furnish inaccurate information about Plaintiffs to all three CRAs, even though the Furnisher Defendants possessed all relevant information about the Accounts and the inaccuracies that Plaintiffs disputed.

132.    The inaccurate Accounts materially and adversely affect Plaintiffs' credit standing.

133.    On at least one occasion within the past two years, by example only and without limitations, the Furnisher Defendants violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiffs' disputes to Experian, Equifax, and Trans Union.

134.    The Furnisher Defendants violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a)     Willfully and negligently failing to conduct an investigation of Plaintiffs' dispute, despite possessing knowledge, information, and records to substantiate Plaintiffs' dispute;

(b)     Willfully and negligently failing to review all relevant information concerning Plaintiffs' dispute;

(c)     Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d)     Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

(e)     Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiffs;

(f)     Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiffs to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g)     Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

135.    The Furnisher Defendants unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiffs' consumer information furnished to the national consumer reporting agencies.

136.    The Furnisher Defendants are a direct and proximate causes, as well as substantial factors in causing damage and harm to Plaintiffs.

137.    Consequently, the Furnisher Defendants are each individually liable to Plaintiffs for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiffs are entitled to Plaintiffs' attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## V.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgments against Defendants for the following:

(a)    Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

(b)    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)    Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VI.    <u>JURY DEMAND</u>

Plaintiffs hereby demands jury trial on all issues so triable.

//

RESPECTFULLY SUBMITTED this 30th day of June, 2025.

/s/ Blake Goodman
Blake Goodman (SBN: 7436)
LAW OFFICES OF
BLAKE GOODMAN, PC
900 Fort Street Mall, #910
Honolulu, HI 96813
E: blake@debtfreehawaii.com
T: (808) 528-4274